SECOND DIVISION

OCTOBER 27, 1998

1-97-3117

PAULINE WOJCIK and PAUL WOJCIK ) APPEAL FROM THE

) CIRCUIT COURT OF

Plaintiff-Appellant, ) COOK COUNTY,

) ILLINOIS

)

v. ) No. 91-L-3786

)

CITY OF CHICAGO, a municipal corp., and ) 

PATRICK McGUINNESS ) THE HONORABLE

) FRANK ORLANDO,

Defendant-Appellee. ) JUDGE PRESIDING.

JUSTICE COUSINS delivered the opinion of the court:

Plaintiffs, Pauline and Paul Wojcik, filed a medical malpractice suit against defendants, City of Chicago and Patrick McGuinness, a paramedic employed by the City of Chicago fire department, for willful and wanton misconduct resulting in injuries to Pauline Wojcik.  A jury returned a verdict in favor of defendants and against plaintiffs.  On appeal, plaintiffs contend that:  (1) the trial court improperly admitted evidence that St. Anthony Hospital was the sole proximate cause of the plaintiffs' injuries; (2) the trial court improperly instructed the jury regarding proximate cause; (3) a variety of other trial court evidentiary rulings were incorrect; and (4) the plaintiffs were entitled to a judgment 
non obstante veredicto
 or a new trial.

BACKGROUND

On March 11, 1990, Pauline Wojcik, a diabetic, was treated for hypoglycemia by paramedics employed by the City of Chicago (the City).  Hypoglycemia is a condition that results when glucose or blood sugar in a person's body is depleted.  The evidence in the record established that at or around 5 a.m. Paul Wojcik dialed 911 because Pauline was sweaty and unresponsive.  The paramedics, Patrick McGuinness and John Scheuneman
(footnote: 1), arrived at the Wojciks' apartment at approximately 5:30 a.m. and tested Pauline's blood sugar, which they found was quite low.  Scheuneman connected an intravenous (IV) line to the back of Pauline's right hand and administered an ampule of 50 cc's of a 50% dextrose solution (D50) into the vein.  The method of administering D50 is to begin an IV line with 5% dextrose (D5W) and, when the IV is patent, administer a push of D50 until the patient is responsive.  D5W is an isotonic solution, meaning that it is approximately the same density as blood and body fluids.  However, D50 is hypotonic, meaning it is more dense and concentrated than body fluids.

Pauline was transported by ambulance to St. Anthony Hospital, arriving at approximately 6:08 a.m.  St. Anthony Hospital continued the treatment and administered an additional 500 cc's of D5W into the IV set up by Scheuneman.  

The Wojciks arranged for a private ambulance service to transfer Pauline from St. Anthony Hospital to Mount Sinai Hospital, where her attending physician was located.  Reliance Ambulance paramedics Osmar Orozco and Juan Mejia transferred Pauline approximately three to four hours after her arrival at St. Anthony Hospital.  Mejia noticed that Pauline's right hand was red and swollen, and he documented that the swelling was a result of infiltration of D50 administered by paramedics McGuinness and Scheuneman into Pauline's right hand.  Infiltration occurs when the fluid intended for the vein goes into the surrounding tissues instead.  As a result, the body sends fluids to dilute the tissues and swelling occurs.  Once at Mount Sinai Hospital, Pauline was seen, examined, and admitted for further care.

On March 12, 1990, the day after the incident, Dr. Orhan Kaymakcalan, a specialist in hand surgery and microsurgery, noticed marked swelling of Pauline's right upper extremity and determined that she had compartment syndrome.  Compartment syndrome occurs when there is increased pressure in a limited space and insufficient blood flow into the area, depriving nerves and muscles in the area of the oxygen needed in order to function correctly.  If six hours elapse after the compartment syndrome occurs, surgery will generally be required to decompress the area.

Dr. Kaymakcalan performed an emergency fasciotomy to decompress the dorsum of Pauline's right hand and forearm.  Following that surgery, another procedure was done to graft skin taken from her hip to close the wound on her right forearm.  Pauline was discharged from Mount Sinai Hospital on March 20, 1990, and underwent occupational therapy until August 24, 1990, to help with her diminished sense of touch.  She also had permanent damage and scarring of the right forearm, top of the hand between the thumb and index finger, and hip.

During trial, plaintiffs presented opinion testimony from two experts to establish that the conduct of McGuinness and Scheuneman, the City paramedics, was willful and wanton.  Both experts testified that a minimal national standard of care applied to the care in issue.

Richard Hansson, a former emergency medical technician and paramedic, testified that the normal course of treatment for hypoglycemia is to administer D50 through an IV.  Hansson noted that one should use as large a vein as possible for the IV because the treatment requires the infusion of a large volume of liquid.  Hansson asserted that the larger vein reduces the risk of infiltration, which occurs when the fluid intended for the vein goes into the surrounding tissues instead.  He further noted that infiltration is not infrequent and can be avoided by observation.  Consequently, if medical personnel see swelling at the site of the IV, they should discontinue the IV and search for another site.

According to Hansson, McGuinness and Scheuneman did not meet the standard of care when they were treating Pauline because they selected a vein that was too small and failed to discontinue the IV when infiltration and swelling occurred.  Further, Hansson opined that the conduct showed a conscious disregard for a known risk.

Dr. Albert Frankel, a specialist in emergency medicine who is also trained in orthopedic surgery, was the plaintiffs' second expert.  Dr. Frankel testified that, in 1990, paramedics would treat hypoglycemia by starting an IV in a vein and then giving a D50 push through the IV.  Because infiltration is noticeable when it occurs, Dr. Frankel opined that the paramedics should have noticed the infiltration of Pauline's hand.  Dr. Frankel felt that in failing to observe the local swelling and discontinue the IV immediately, the defendants failed to exercise the skill and care of reasonably well-qualified paramedics.  However, he did not believe the paramedics consciously disregarded a known risk to Pauline in doing so.  Dr. Frankel opined that the infiltration of D50 given by the defendants caused Pauline's injuries.

The defendants presented opinion testimony from two expert witnesses.  Dr. Joseph Mitton, a specialist in emergency medicine, opined that Pauline's compartment syndrome was not a result of infiltration of D50 administered by defendants.  Rather, he believed the infiltration that led to compartment syndrome was more likely caused by the later infiltration of D5W administered through the IV line at St. Anthony Hospital.

Dr. Mitton testified that if D50 was infiltrating when first administered, Pauline would not have responded as quickly.  Moreover, he opined that a person with peripheral vascular disease is more likely than a person without the disease to get compartment syndrome from an IV because a person with the disease has decreased blood flow in the small blood vessels in the extremities.  Further, Dr. Mitton asserted that one cannot tell if someone has peripheral vascular disease by looking at him or her.

The defendants' second expert was Janis Sanchez, a nurse manager of the emergency room at Ravenswood Hospital who trains paramedics.  Sanchez explained that standing medical orders are step-by-step instructions used by paramedics directing them how to treat particular conditions.  The orders are written by physicians and establish the standard of care for treating injured patients in Chicago.

The standing medical orders in effect in March 1990 allowed for paramedics to give a D50 push through an IV once they tested the patient's blood sugar and found it to be low.  Sanchez explained that if the fluid did not flow into the vein when the IV was attached, it would cause visible swelling around the site.  Further, she testified that paramedics were trained to look and make sure there was no swelling at the site.  If swelling was observed, they were to immediately stop the IV and look for another site.

On February 26, 1997, following trial, the jury returned a verdict in favor of defendants and against plaintiffs. Plaintiffs appeal.

We affirm. 

ANALYSIS

I

Plaintiffs first contend that the circuit court abused its discretion in allowing the admission of evidence that St. Anthony Hospital was the sole proximate cause of Pauline's injuries.  Specifically, they allege that the evidence of fault by non parties was not at issue and was highly prejudicial. 

Plaintiffs correctly note that defendants were jointly and severally liable under section 2~1118 of the Illinois Code of Civil Procedure (735 ILCS 5/2~1118 (West 1994)).  However, their reliance on the statute is misplaced as comparative fault was not an issue in the case.  Defendants denied that they were even partly a proximate cause of Pauline's injuries.  Rather, the defense theory was that the hospital was the sole proximate cause of Pauline's injuries.

The present case accords with 
Leonardi v. Loyola University
, 168 Ill. 2d 83, 658 N.E.2d 450 (1995).  In 
Leonardi
, the estate of a deceased patient brought a medical malpractice suit against the decedent's hospital and physicians following an emergency pulmonary embolectomy which resulted in irreversible brain damage to decedent.  
Leonardi
, 168 Ill. 2d at 90, 658 N.E.2d at 454.  In ruling on the admissibility of evidence relating to defendant's sole proximate cause argument, our supreme court noted that "[t]he sole proximate cause defense merely focuses the attention of a properly instructed jury *** on the plaintiff's duty to prove that the defendant's conduct was a proximate cause of plaintiff's injury."  
Leonardi
, 168 Ill. 2d at 94, 658 N.E.2d at 456.  "A defendant has the right not only to rebut evidence tending to show that defendant's acts are negligent and the proximate cause of claimed injuries, but also has the right to endeavor to establish by competent evidence that the conduct of a third person, or some other causative factor, is the sole proximate cause of plaintiff's injuries."  
Leonardi
, 168 Ill. 2d at 101, 658 N.E.2d at 459.

Consequently, defendants' general denial of liability even without an affirmative defense, counterclaim, or third-party action is sufficient to permit them, in support of their position, to present evidence that the injury to Pauline was the result of another cause.  See 
Leonardi
, 168 Ill. 2d at 94, 658 N.E.2d at 455.

Plaintiffs further contend that their motion 
in limine
 to exclude opinion testimony regarding non party fault should have been granted in that neither the factual evidence nor opinion testimony supported the defense's theory that St. Anthony Hospital was the sole proximate cause.  As a rule, however, the relevance and admissibility of evidence at trial is committed to the sound discretion of the trial court and its determination will not be overturned absent a showing of clear abuse of that discretion resulting in substantial prejudice affecting the outcome of the trial.  
Leonardi
, 168 Ill. 2d at 92, 658 N.E.2d at 454-55; 
People v. Hayes
, 139 Ill. 2d 89, 130, 564 N.E.2d 803, 820 (1990).

"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence.  Fed. R. Evid. 401; 
People v. Free
, 94 Ill. 2d 378, 413, 447 N.E.2d 218, 235 (1983).  Further, questions of negligence, due care and proximate cause are ordinarily questions of fact for the jury to decide and become questions of law only when the facts are undisputed or there can be no difference in the inference a jury could draw from the facts.  
Ney v. Yellow Cab Co.
, 2 Ill. 2d 74, 84, 117 N.E.2d 74, 80 (1954); 
Ward v. K mart Corp.
, 136 Ill. 2d 132, 156, 554 N.E.2d 223, 226 (1990).

We cannot say that the admission of evidence regarding defendants' sole proximate cause argument was error or that prejudice resulted from the admission of the evidence thereby warranting a new trial.  During discussion of the motion 
in limine
, the following exchange occurred between the court and counsel for the plaintiffs:

"MS. CLINITE:  Does the Court disagree with my understanding of the statute that joint and several applies to this case and counsel may not argue to the jury that nonparties were at fault?

THE COURT:  If they're all the painted [
sic
] with the brush of fault, I'll let you argue as to what the degree of fault is.  Because one is at fault, that doesn't preclude the argument that's made by the plaintiff that the fault that rises to the level of whatever it is that your degree of fault is accusing them of, and you proceed on that theory.

MS. CLINITE:  How is the fault of anybody other than the defendant in issue?

***

THE COURT:  That's going to be the focus of the plaintiff's case, I presume, but it's addressing Mr. McGuinness and by linkage to the City.  And the I [
sic
] perceive the defendant's evidence is going to go along the lines that the McGuinness defendant did no wrong and the sole proximate cause, if any, is elsewhere to be found."

The court found the evidence to be relevant to the defendants' sole proximate cause theory and allowed the testimony.  We agree.

Plaintiffs further contend that defendants presented no competent evidence that the IV infiltration was caused by St. Anthony Hospital as the issue in the case concerned "whether defendants improperly administered IV push of 50% dextrose into the right hand, and then failed to promptly remove it when infiltration began."

It has been held that in any negligence action the plaintiff bears the burden of proving not only duty and breach of duty, but also that defendant proximately caused plaintiff's injury.  
Smith v. Eli Lilly & Co.
, 137 Ill. 2d 222, 232, 560 N.E.2d 324, 328 (1990).  The element of proximate cause is an element of the 
plaintiff's
 case.  "[I]f there is evidence that negates causation, a defendant should show it.  However, in granting the defendant the privilege of going forward, also called the burden of production, the law in no way shifts to the defendant the burden of proof."  
Leonardi
, 168 Ill. 2d at 94, 658 N.E.2d at 455; see also M. Graham, Cleary & Graham's Handbook of Illinois Evidence §301.4 (6th ed. 1994).

II

Plaintiffs next contend that the circuit court improperly instructed the jury regarding proximate cause.  The general rule is that the court must instruct the jury on all issues reasonably presented by the evidence.  
Chicago Title & Trust Co. v. Brescia
, 285 Ill. App. 3d 671, 685-86, 676 N.E.2d 230, 239 (1996).  An instruction will be deemed to have been properly given where it is supported by some evidence in the record (
Yates v. Chicago National League Ball Club, Inc.
, 230 Ill. App. 3d 472, 487, 595 N.E.2d 230, 239 (1992)); yet, it is error to give an instruction not based on evidence.  
Leonardi
, 168 Ill. 2d at 100, 658 N.E.2d at 458.  Further, the trial court is obligated to determine what instructions should be tendered to the jury, and its decision will not be disturbed absent an abuse of discretion.  
Lundquist v. Nickels
, 238 Ill. App. 3d 410, 431, 605 N.E.2d 1373, 1388 (1992).

The test used in determining the propriety of tendered instructions is whether the jury was fairly, fully, and comprehensively informed as to the relevant principles considering the instructions in their entirety.  
Leonardi
, 168 Ill. 2d at 100, 658 N.E.2d at 458.  Because each party is entitled to have the jury properly instructed on his theory of the case, the failure to do so may warrant a new trial.  
Willhite v. Goodman
, 64 Ill. App. 3d 273, 275, 381 N.E.2d 68, 69 (1978).

In the present case, the trial court tendered to the jury the long version of Illinois Pattern Jury Instructions, Civil, No. 12.04 (3d ed. 1989) (hereinafter IPI Civil 3d No. 12.04), which states:

"More than one person may be to blame for causing an injury.  If you decide that the defendant[s] w[ere] [guilty of willful and wanton misconduct] and that [their] [willful and wanton misconduct] was a proximate cause of injury to the plaintiff[s], it is not a defense that some third person who is not a party to the suit may also have been to blame.

[However, if you decide that the sole proximate cause of injury to the plaintiff[s] was the conduct of some person other than the defendants, then your verdict should be for the defendant[s].]"

However, plaintiffs contend that the trial court erred in tendering the second paragraph of the instruction for two reasons:  (1) the defendants failed to establish that St. Anthony Hospital was the sole proximate cause of Pauline's injuries; and (2) the record contained no evidence that supports the second paragraph of the jury instruction.

The plaintiffs first argue that defendants failed to establish that St. Anthony Hospital was the sole proximate cause of Pauline's injuries; therefore, they were not entitled to the instruction.  As previously discussed, a defendant has the right not only to rebut evidence tending to show that his acts are negligent and the proximate cause of claimed injuries, but he also has the right to endeavor to establish by competent evidence that the conduct of a third person is the sole proximate cause.  See 
Leonardi
, 168 Ill. 2d at 101, 658 N.E.2d at 459.  A reviewing court ordinarily will not reverse a trial court for giving faulty instructions unless they clearly misled the jury and resulted in prejudice to the appellant.  
Villa v. Crown Cork & Seal Co.
, 202 Ill. App. 3d 1082, 1087-88, 560 N.E.2d 969, 972 (1990).

In our view, the jury instruction did not mislead the jury or cause prejudice to plaintiffs.  Defendants' argument throughout the trial was that St. Anthony Hospital was the sole proximate cause of Pauline's injuries.  They presented evidence to that effect and, therefore, were entitled to the long version of the instruction in regard to their theory of the case.

Plaintiffs also argue that the record contained no evidence that supports the second paragraph of the jury instruction.  The notes to the instruction state:  "The second paragraph should be used only when there is evidence tending to show that the sole proximate cause of the occurrence was the conduct of a third person."  (IPI Civil 3d No. 12.04, Notes on Use, at 12~9).  "'All that is required to justify the giving of an instruction is that there be some evidence in the record to justify the theory of the instruction.'"  
Leonardi
, 168 Ill. 2d at 101, 658 N.E.2d at 459, quoting 
Lowe v. Norfolk & Western Ry. Co.
, 124 Ill. App. 3d 80, 118, 463 N.E.2d 792, 819 (1984).

The plaintiffs argue that defendants did not present evidence that St. Anthony Hospital was the sole proximate cause.  They further rely on 
Holton v. Memorial Hospital
, 176 Ill. 2d 95, 679 N.E.2d 1202 (1994), in support of their contention that the instruction misled and confused the jury as to the real issue to be considered.  In 
Holton
, the court held: "A defendant is not automatically entitled to a sole proximate cause instruction wherever there is evidence that there may have been more than one, or concurrent, causes of an injury or where more than one person may have been negligent.  Instead, a sole proximate cause instruction is not appropriate unless there is evidence that the sole proximate cause (not 
'a'
 proximate cause) of a plaintiffs injury is conduct of another person or condition."  (Emphasis omitted and added.) 
Holton
, 176 Ill. 2d at 134, 679 N.E.2d at 1219.  However, the defendant in 
Holton
 did not present evidence or argument that it was only the negligence of persons other than hospital employees that proximately caused plaintiff's injuries.  
Holton
, 176 Ill. 2d at 134, 679 N.E.2d at 1219.  Rather, the defendant attempted to establish that no medical negligence had occurred at all.  

In the case 
sub judice
, the defense theory was that the hospital was the sole proximate cause, and their expert witnesses corroborated that theory with opinions offered from a reasonable degree of medical certainty.  Additionally, at the jury instruction conference, the trial court found that the record contained sufficient evidence of St. Anthony Hospital's involvement to justify giving the second paragraph of the instruction.  

After carefully reviewing the instructions in their entirety, we conclude that the jury was fairly, fully, and comprehensively informed as to the relevant legal principles.  We cannot say that the court abused its discretion in allowing the instruction.

III

Plaintiffs further contend that a variety of other circuit court evidentiary rulings were incorrect.  Specifically, they assert that:  (1) the trial court improperly allowed evidence of: (a) a preexisting vascular disease and (b) subsequent intravenous burns to Pauline's left arm; (2) the trial court improperly allowed defendants to suggest plaintiff was at fault with evidence of inconsistent statements; (3) the trial court improperly allowed evidence of standing medical orders as the standard of care governing the paramedics; (4) the trial court improperly allowed defendants to elicit expert opinions of possible causes; and (5) the testimony of the defendants' expert witnesses should have been stricken and/or a mistrial should have been granted.  We will address each contention in turn.

A

Plaintiffs first contend that the trial court erred in denying their motion 
in limine
 and allowing evidence that Pauline had peripheral vascular disease, a preexisting vascular condition that purportedly predisposed her to the injured suffered.  They also opine that the trial court erred in allowing evidence of a subsequent IV burn to Pauline's left arm, which was irrelevant to the issues in the case.

It is undisputed that the admission or exclusion of evidence rests in the trial court's exercise of discretion.  
Gill v. Foster
, 157 Ill. 2d 304, 312-13, 626 N.E.2d 190, 194 (1993).  Further, an appellate court will reverse such a decision only when there is an abuse of discretion.  
Leonardi
, 168 Ill. 2d at 93, 658 N.E.2d at 454-55.

A tortfeasor is liable for the injuries he causes, even though the injuries may not have occurred but for the peculiar preexisting weaknesses of the injured person.  
Pozzie v. Mike Smith, Inc.
, 33 Ill. App. 3d 343, 347, 337 N.E.2d 450, 453 (1975).  And, evidence of a preexisting condition should be excluded where there is no evidence of a causal connection between the preexisting condition and the current injury.  
Podoba v. Pyramid Electric, Inc.
, 281 Ill. App. 3d 545, 550-51, 667 N.E.2d 167, 171 (1996).  In the present case, however, expert testimony indicated that Pauline's peripheral vascular disease contributed to the infiltration which led to her compartment syndrome.

Relevancy is established where a fact offered tends to prove that a fact in controversy is more or less probable.  
Marut v. Costello
, 34 Ill. 2d 125, 128, 214 N.E.2d 768, 769 (1966).  We believe the evidence regarding whether D5W or D50 caused the infiltration was relevant to the issue of proximate cause.  Accordingly, the trial court properly admitted evidence of Pauline's peripheral vascular disease as a causal connection to her compartment syndrome.

Prior to trial, plaintiffs presented a motion 
in limine
 that sought to exclude any evidence of an IV burn subsequent to the injuries claimed, which was denied.  Thereafter, the defendants presented evidence that, subsequent to the occurrence in issue, Pauline suffered a burn to her left arm from an IV.  After objection, counsel for the defense posited that the testimony regarding the subsequent injury was relevant to show a predisposition to injuries from IVs.  Counsel further stated that the testimony would be connected by later expert testimony.

Dr. Kaymakcalan, Pauline's treating physician, testified regarding the extent of Pauline's subsequent injuries and noted that the subsequent IV burns were unrelated to the injury at issue.  Further, in questioning their own expert witnesses, the defense elicited no information that laid the foundation for the admission of evidence regarding the subsequent IV burn to Pauline's left arm.  Dr. Mitton simply noted that the injury was secondary to the infiltration of D5W and not D50, which was the same type of substance given to Pauline by St. Anthony Hospital.  No other information was deduced that established any similarity of conditions other than the substance involved.  Accordingly, in our view, it was error for the court to allow evidence of subsequent IV burns to Pauline's left arm.  However, we do not believe the error resulted in substantial prejudice affecting the outcome of the trial.  Thus, the error was harmless.  See 
Hayes
, 139 Ill. 2d at 130, 564 N.E.2d at 820.

B

Plaintiffs next contend that the defendants improperly suggested to jurors that Pauline was at fault for her injury, arguing that elicited testimony concerning a party Pauline allegedly attended the night before the incident was irrelevant and "created an impression in the minds of the jury that Pauline Wojcik was at fault."  However, on cross-examination, defendants acknowledged that the proffered testimony went to impeach Pauline with prior inconsistent statements.

Supreme Court Rule 238 (134 Ill. 2d R. 238) governs impeachment of witnesses.  Under Rule 238(a), the credibility of a witness can be attacked by any party.  Such an attack may be accomplished by impeaching the witness with evidence of a prior inconsistent statement.  See 
People v. Cruz
, 162 Ill. 2d 314, 358, 643 N.E.2d 636, 657 (1994).  "The test for determining whether impeachment is permissible depends on objectively identifiable facts from which the examiner's state of mind can be inferred."   
Cruz
, 162 Ill. 2d at 361, 643 N.E.2d at 658.

Pauline was cross-examined concerning her testimony that she went to bed between 10 p.m. and 10:30 p.m. on the evening of March 11, 1990, after watching television and relaxing, and that she felt fine during the evening.  In order to impeach her credibility, defense counsel asked her about the prior inconsistent statement that she informed the nursing staff that she went out to a party the night before the incident and increased her own insulin because of overindulgence.  Pauline's testimony was further impeached concerning her testimony that she remembered the paramedics working on her, that her right hand and arm hurt from the time the IV was inserted, and that she complained about the pain before and during her ambulance ride to St. Anthony Hospital.  Her deposition testimony conflicted with this in-court testimony.

In our view, a review of the record indicates that the evidence was properly admitted to impeach the credibility of Pauline's statements and was not admitted to imply fault by Pauline for her injuries.  As long as the jury's resolution was supported by credible evidence, we will not substitute our judgment for that of the jury.  See 
Seward v. Griffin
, 116 Ill. App. 3d 749, 760, 452 N.E.2d 558, 567 (1983). 

C

Plaintiffs next contend that the trial court abused its discretion in allowing the defendants to introduce testimony that the standing medical orders for the paramedics established the standard of care.

Evidence of compliance with local rules, protocols, policies or standing orders is not conclusive on the issue of standard of care.  
Clinton v. Commonwealth Edison Co.
, 36 Ill. App. 3d 1064, 1070, 344 N.E.2d 509, 515 (1976).  However, evidence of standards promulgated by a professional group may be admissible as evidence to aid the trier of fact in determining the standard of care.  
Ruffiner v. Material Service Corp.
, 116 Ill. 2d 53, 58, 506 N.E.2d 581, 584 (1987).

In the present case, nurse Sanchez testified that the standing medical orders are written by physicians and establish the standard of care for treating injured patients in Chicago.  In our view, Sanchez's testimony concerning the standing medical orders of the care that paramedics were to give to patients in Chicago was consistent with the minimal national standards proffered by plaintiffs' expert witnesses.  
Ruffiner
, 116 Ill. 2d at 58, 506 N.E.2d at 584.  Accordingly, the trial court did not abuse its discretion in allowing the evidence.

D

Plaintiffs next contend that it was improper for the defendants to elicit an opinion from Dr. Kaymakcalan based on possibility rather than on a reasonable degree of medical certainty.

Liability in a personal injury action cannot be based on speculation or conjecture, and the burden is on the plaintiff to produce evidence, either direct or circumstantial, to show not only that injuries exist, but also that they were the result of the occurrences at issue.  
Mesick v. Johnson
, 141 Ill. App. 3d 195, 204, 490 N.E.2d 20, 27 (1986).  Although an expert may not guess, conjecture, or surmise as to a possible cause for the injury, an expert can testify in terms of possibilities or probabilities so long as the opinion is based on a reasonable degree of medical certainty.  
Baird v. Adeli
, 214 Ill. App. 3d 47, 65, 573 N.E.2d 279, 290 (1991); 
Dupree v. County of Cook
, 287 Ill. App. 3d 135, 143, 677 N.E.2d 1303, 1309 (1997).  Furthermore, there is no requirement that the testimony of a medical expert be based on absolute certainty; only a reasonable degree of medical and scientific certainty is necessary.  
Hunter v. Chicago & Northwestern Transportation Co.
, 200 Ill. App. 3d 458, 473, 558 N.E.2d 216, 226 (1990). 

In the present case, on direct examination, counsel for plaintiffs asked Pauline's treating physician, Dr. Kaymakcalan, the following:

"Q. Doctor, in your experience can infiltration of 50 percent dextrose cause compartment syndrome?

A. There are so many causes of compartment syndrome; the blunt trauma, the bleeding, these are common things, the IV drug users, infiltration, yes, that may cause compartment syndrome.

Q. Now, considering Paula Wojcik's history and findings and your treatment of her, do you have an opinion whether the compartment syndrome that she suffered was likely the result of infiltration of D50?

A. From history, if there is no other -- there was no other history available, no trauma, I assume so.  If it's the only given history."

On cross-examination, defense counsel questioned Dr. Kaymakcalan's testimony:

"Q. Is it possible that the administration of 500 ccs of D5W could have been the fluid that infiltrated into Mrs. Wojcik's right arm?

MS. CLINITE: Objection as to possible.

THE COURT: Overruled.  That is cross-examination I'll allow it.

***

A. Then usually -- anything could be possible, but I didn't see it."

A physician may testify to what might or could have caused an injury despite any objection that the testimony is inconclusive.  
Mesick
, 141 Ill. App. 3d at 205, 490 N.E.2d at 28.  Such testimony is but the opinion of the witness, given on facts assumed to be true.  
Mesick
, 141 Ill. App. 3d at 206, 490 N.E.2d at 28.  It remains for the trier of fact to determine the facts and inferences to be drawn therefrom.  
Mesick
, 141 Ill. App. 3d at 206 490 N.E.2d at 28.  Accordingly, the trial court did not abuse its discretion in allowing the evidence.

E

Plaintiff also contends that the testimony of defendants' expert witnesses should have been stricken and/or a mistrial granted.  Expert testimony is admissible whenever it will assist the trier of fact to understand evidence or to decide a fact in issue that is difficult to comprehend or to explain.  
Thacker v. UNR Industries, Inc.
, 151 Ill. 2d 343, 365, 603 N.E.2d 449, 460 (1992).  An expert may testify to the ultimate issue in the case because the jury is free to reject that opinion.  
Merchants National Bank v. Elgin, Joilet & Eastern Ry. Co.
, 49 Ill. 2d 118, 122, 273 N.E.2d 809, 811 (1971).

"A mistrial is necessary when it is apparent that the jury was so influenced and prejudiced that it could not have been fair and impartial and that the damaging effect could not be cured by admonitions and instructions."  
People v. Clark
, 231 Ill. App. 3d 571, 574-75, 596 N.E.2d 642, 644 (1992).  Whether to declare a mistrial and/or to grant a new trial rests within the trial court's sound discretion and will not be reversed absent a clear abuse of discretion.  
Maple v. Gustafson
, 151 Ill. 2d 445, 455, 603 N.E.2d 508, 513 (1992).  "A mistrial should be declared only as the result of some occurrence of such character and magnitude that a party is deprived of its right to a fair trial, and the moving party must demonstrate actual prejudice as a result of the ruling or occurrence."  
Baker v. CSX Transportation, Inc.
, 221 Ill. App. 3d 121, 138, 581 N.E.2d 770, 782 (1991).

In our view:  (1) the jury was not so influenced and prejudiced that it could not have been fair and impartial; (2) the damaging effect was not so great that it could not be cured by admonitions and instructions; and (3) no "actual prejudice" was demonstrated by plaintiffs requiring a mistrial.  Accordingly, we believe the trial court did not abuse its discretion in admitting the testimony of defendants' expert witnesses or denying plaintiffs' motion for a mistrial.

IV

Plaintiffs finally contend that they were entitled to a judgment 
non obstante veredicto
 (
n.o.v.
) or, in the alternative, a new trial as the evidence overwhelmingly established that the cause of Pauline's injuries was the placement of the IV by defendants paramedics.

"[J]udgments 
n.o.v.
 [should be] entered only in those cases in which all of the evidence, when viewed in the light most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based upon that evidence could ever stand."  
Pedrick v. Peoria & Eastern R.R. Co.
, 37 Ill. 2d 494, 510, 229 N.E.2d 504, 514 (1967).  A motion for a judgment 
n.o.v.
 presents a question of law and will be granted only if there is a total failure or lack or evidence to prove an essential element of the plaintiff's case.  
Merlo v. Public Service Co.
, 381 Ill. 300, 311, 45 N.E. 665, 672 (1942).  Where the evidence demonstrates a substantial factual dispute, or where the assessment of credibility of the witnesses or the determination regarding conflicting evidence may be decisive of the outcome, it is error to enter a judgment 
n.o.v.
  
Villa
, 202 Ill. App. 3d at 1087, 560 N.E.2d at 972.

We do not believe the evidence at bar so overwhelmingly favors plaintiffs that no verdict contrary to plaintiffs could ever stand.  While the parties' expert opinion testimony differed with respect to the purported cause of infiltration, the evidence permits the inference that St. Anthony Hospital was the sole proximate cause of Pauline's injuries.  A court cannot reweigh the evidence and set aside a verdict merely because the jury could have drawn different inferences or conclusions, or because the court feels other results are more reasonable.  
Maple
, 151 Ill. 2d at 452, 603 N.E.2d at 512.  It is within the jury's province to resolve conflicts in the evidence and as long as the jury's resolution is supported by credible evidence, a reviewing court should not substitute its judgment for that of the jury.  
Seward
, 116 Ill. App. 3d at 760, 452 N.E.2d at 567; 
Maple
, 151 Ill. 2d at 452, 603 N.E.2d at 511-12.  Likewise, the appellate court should not usurp the function of the jury and substitute its judgment on questions of fact fairly submitted, tried, and determined from the evidence which did not greatly preponderate either way.  
Maple
, 151 Ill. 2d at 452-53, 603 N.E.2d at 512.

Plaintiffs further contend that a new trial should be granted on all the issues because the verdict was contrary to the manifest weight of the evidence and resulted from passion or prejudice.

Our supreme court emphasized in 
Pedrick
 that a different standard is applied to a motion for a new trial than for a judgment 
non obstante veredicto
.  
Pedrick
, 37 Ill. 2d at 509-10, 229 N.E.2d at 513.  New trials should be granted only when the opposite conclusion is clearly apparent to the reviewing court or the jury's findings are unreasonable, arbitrary and not based on the evidence.  
Maple
, 151 Ill. 2d at 454, 603 N.E.2d at 512-13; 
Finley v. New York Central R.R. Co.
, 19 Ill. 2d 428, 434, 167 N.E.2d 212, 215 (1960).  Verdicts are set aside and new trials ordered when the verdict of the jury is against the manifest weight of the evidence, meaning a conclusion opposite that reached by trier of fact must be clearly evident, plain, and indisputable.  
Pedrick
, 37 Ill. 2d at 509, 229 N.E.2d at 513; 
In re Estate of Lukas
, 155 Ill. App. 3d 512, 520-21, 508 N.E.2d 368, 374 (1987).

In this case, the jury returned a verdict in defendants' favor.  After considering all of the evidence in the light most favorable to the plaintiffs, we cannot find that the verdict was against the manifest weight of the evidence.  Accordingly, we affirm the decision of the circuit court.

Affirmed.

GORDON, P.J., and RAKOWSKI, J., concur.

FOOTNOTES
1:     
  
Scheuneman is not named as a defendant in these proceedings.