FIFTH DIVISION

November 15, 2002

No. 1--01--1208

OMAR HERNANDEZ, ) Appeal from the

 ) Circuit Court of

Plaintiff-Appellant, ) Cook County.

 )

v. ) No. 95 L 4845

 )

PASCHEN CONTRACTORS, INC., a Corporation,)

and PASCHEN/RAUSCH, a Joint Venture, ) The Honorable

 ) Daniel M. Locallo,

Defendants-Appellees. ) Presiding Judge.

JUSTICE BUCKLEY delivered the opinion of the court:

Plaintiff Omar Hernandez appeals from the jury's verdict in favor of defendants Paschen Contractors, Inc., and Paschen/Rausch (hereinafter both defendants shall be referred to a Paschen) on plaintiff's Structural Work Act (740 ILCS 150/0.01 (West 1992)) claim.  Upon appeal, plaintiff contends the trial court erred in: (1) admitting evidence in a Structural Work Act case that plaintiff acted negligently; (2) admitting evidence that plaintiff received written rules and warnings concerning ladder safety prior to the accident; (3) admitting evidence that Paschen delegated its responsibility for safety to plaintiff's employer, JWP/Hyre (Hyre); (4) allowing Paschen's expert witness to interpret a contract; (5) barring plaintiff's witness's testimony that the ladder used by plaintiff was "shaky" and "unsteady"; (6) denying plaintiff's motion for a directed verdict on the issue of whether Paschen had charge of the work; and (7) denying plaintiff's motions for a judgment notwithstanding the verdict (judgment n.o.v.) or, alternatively, for a new trial.  We affirm.

Paschen was the general contractor for a large renovation project at the Cook County Juvenile Detention Center.  Paschen subcontracted work on the installation of a fire alarm system to Hyre, which employed plaintiff as an apprentice electrician.  On August 27, 1994, plaintiff sustained injuries when he fell from a ladder while working on the project.  Plaintiff filed a claim against Paschen, alleging that its violations of the Structural Work Act (the Act) (740 ILCS 150/0.01 (West 1992))
(footnote: 1) caused plaintiff's injuries.

At trial, plaintiff testified that on the day of his injury, he was an apprentice electrician employed by Hyre.  His job that day was to install a conduit into a box in an electrical closet.  The box was located approximately 10½ feet from the floor and plaintiff used an 8-foot ladder to access the box.  Plaintiff stated that as he climbed the ladder, it seemed a little shaky.  Due to the small dimensions of the room, plaintiff placed the ladder parallel to the wall and underneath the box in order to work.  Although plaintiff initially testified that he had both feet on the third or fourth rung of the ladder at the time of the acci-dent, when confronted with his earlier deposition testimony plain-tiff admitted he was straddling the ladder and rocking it back and forth when he fell.  As he was putting the conduit into the connec-tor, he heard a cracking sound just before the ladder gave way underneath him.  Plaintiff fell onto the concrete slab floor, sustaining injuries.

Upon cross-examination, plaintiff admitted that as part of his apprenticeship he was taught how to use tools safely and how to recognize hazards and dangers in the job.  Plaintiff also stated that he had climbed the ladder in question at least six times on the night of his accident and found it safe enough to perform his work. 

Richard Kelly testified that he was the Hyre foreman and elec-trician working with plaintiff at the time of plaintiff's injury.  He was not present when plaintiff fell from the ladder.  After plaintiff was taken away, Kelly noticed that two rubber feet were missing from the ladder and that the ladder had a broken leg.  Although he stated he was not an expert on ladders, Kelly agreed that an electrician uses a ladder often in his work.  Kelly testi-fied that he used the ladder in question four or five times the night plaintiff was injured and found the ladder to be safe and stable.  Plaintiff never complained to Kelly that the ladder was unsafe.

Plaintiff's expert witness, Jon Ver Halen, testified that the ladder in question showed signs of heavy use and was at the end of its useful life.  Ver Halen stated that the fatigue fractures and loose braces he found on the ladder existed before the time of plaintiff's accident and indicated long-term, heavy use.  As a result, whenever someone used the ladder, it would have "a fair amount of sway in it."  Ver Halen also found that the "friction feet on the front are gone."  He concluded that the ladder was unsafe for use at the time of plaintiff's accident.  Further, given the set-up of the electrical closet in which plaintiff worked, Ver Halen testified that plaintiff had no alternative but to position the ladder in such a way as to apply a heavy side load.  He stated that, given the condition of the ladder, plaintiff's straddling of the ladder did not contribute to his fall.  Ver Halen admitted that he had examined the ladder only after it had been stored in a warehouse for five years. 

Paschen's expert witness, John Earl Meyers, testified that straddling a ladder and rocking back and forth puts an inappropri-ate side load on the ladder, causing it to become less stable.  He concluded that this action caused the ladder to fall in plaintiff's case.  Meyers further testified that even a new ladder, used in this manner, could tip over.

Paschen's expert witness, Thomas Toole, testified that he re-created plaintiff's working conditions at the time of his accident.  Toole found that the ladder could be used safely to perform the work and became unsafe only when plaintiff improperly "straddled the ladder and in combination with the pushing and pulling *** put a side load on that ladder which was almost inevitable that it was going to go over.  But it had nothing to do with the ladder." 

Michael Gartland, a vice president at Hyre and an electrician, testified that Hyre did not inform Paschen that Hyre's electricians were rocking or straddling ladders.  Gartland stated that it was not Hyre's practice or procedure to engage in such activity. 

William Huffman, director of facilities management in Cook County, testified that although the contract between Paschen and Cook County required Paschen to "take all necessary precautions for the safety of employees on the work" and to "coordinate all of the work on the project," the contract did not require Paschen to be present for all work performed by subcontractors, nor did the contract require Paschen to inspect subcontractors' equipment or instruct a subcontractor as to the "manner, means and method" of its work.

The jury returned a verdict in favor of Paschen.  Plaintiff filed a motion for a new trial or, alternatively, for a judgment n.o.v. and a new trial on damages, which the trial court denied.  Plaintiff filed this timely appeal.

Initially, plaintiff moves that we strike portions of Paschen's brief as violative of Supreme Court Rule 341 (155 Ill. 2d R. 341).  We deny the motion to strike, but we disregard any inap-propriate materials contained therein.  

Next, plaintiff contends that the trial court erred when it admitted evidence of his conduct in straddling and rocking the ladder and of the written rules and warnings he received prior to the accident.  The relevance and admissibility of evidence at trial are within the sound discretion of the trial court, and a reviewing court will not disturb the trial court's determination absent a clear abuse of discretion.  
Wojcik v. City of Chicago
, 299 Ill. App. 3d 964, 971, 702 N.E.2d 303, 309 (1998).  "Relevant evidence" is evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence."  
Wojcik
,299 Ill. App. 3d at 971, 702 N.E.2d at 309.  

To sustain a cause of action under the Act, plaintiff here must show, among other factors, that a defect in the ladder created an unsafe working condition which proximately caused his injuries.  
Bakkan v. Vondran
, 202 Ill. App. 3d 125, 128, 559 N.E.2d 815, 817 (1990).  Plaintiff's injury must have some connection with the hazardous nature of the mechanical device.  
Bakkan
, 202 Ill. App. 3d at 128, 559 N.E.2d at 817. "Where the statutory violation does not contribute to proximately cause plaintiff's injury, and where only plaintiff's negligence causes the injury, then no liability arises under the terms of the statute."  
Smith v. Georgia Pacific Corp
, 86 Ill. App. 3d 570, 573, 408 N.E.2d 117, 119 (1980).  See also 
McMahon v. Richard Gorazd, Inc.
, 135 Ill. App. 3d 211, 219, 481 N.E.2d 787, 793 (1985) (where only plaintiff's negligence causes his injuries, no liability exists under the Act).

In the case at bar, plaintiff argued that the ladder he used on the night of his injury was defective and the defect caused the ladder to break resulting in injuries to plaintiff.  Plaintiff also testified that he had no choice but to use the ladder improperly in order to perform his work.   Paschen, however, maintained through-out trial that the ladder was safe and stable and only plaintiff's inappropriate straddling and rocking of the ladder caused it to fall.  Further, Paschen argued that plaintiff could have accom-plished his task using the ladder in an appropriate manner.  At issue was whether Paschen violated the Act by allowing plaintiff to use a dangerously defective ladder, or whether plaintiff's own conduct in straddling and rocking the ladder was the sole proximate cause of  plaintiff's injuries.  Therefore, any evidence tending to establish one of these facts as more probable than the other, including evidence regarding plaintiff's conduct and his knowledge of the proper use of ladders, was relevant at trial and admissible.  The trial court did not err when it admitted this evidence.

Plaintiff also asserts that Paschen ignored its contractual undertaking for "sole and complete" responsibility for the safety of all workers on the job.  Plaintiff states that the foregoing contractual provision renders any evidence regarding his conduct irrelevant.  This argument, though creative, lacks merit.  Clearly, Paschen had a contractual obligation to provide a safe worksite, and thus both sides were entitled to address whether the site was safe.  Thus, Paschen was entitled to try to establish that plain-tiff was the sole proximate cause of his injury and not either a defective ladder or an unsafe site generally.  

Plaintiff correctly argues in its reply brief that under Illinois Pattern Jury Instructions, Civil, No. 180.19 (2000) (hereinafter IPI Civil (2000)), sole proximate cause is a defense only where there is no other competent cause of plaintiff's accident.  Plaintiff states that if an injury is caused by both some conduct on the part of plaintiff and a violation of the Act by Paschen, Paschen is still liable.  We agree.  We do not agree with plaintiff's unsupported assertion that conduct of a "third person" cited in the instruction's notes on use excludes the plaintiff.  
Smith v. Georgia Pacific Corp
., 86 Ill. App. 3d 570, 408 N.E.2d 117 (1980), cited by plaintiff and Paschen, holds to the contrary.  Plaintiff's conduct may be considered by the jury to determine whether plaintiff was the 
sole
 proximate cause of his injury.  
Smith
, 86 Ill. App. 3d at 573, 408 N.E.2d at 119.  See also IPI Civil (2000), No. 180.18, entitled Intervention of Outside Agency (sole proximate cause).  Ultimately, plaintiff's arguments amount to asking us to reweigh the evidence, which we will not do.  There was no error.

Plaintiff next asserts that evidence and argument were errone-ously admitted indicating plaintiff was provided rules or warnings regarding ladder safety by Hyre prior to his accident.  He does not cite to the record but to various pages in his statement of facts.  Presumably, plaintiff intends for the court to sift through these pages and determine which references he is making regarding warnings.  Plaintiff has waived this issue by failing to cite the portion of the 
record
 where the evidence and argument are contained.  155 Ill.2d R. 341.  While Paschen has moved to strike this portion of plaintiff's brief and, indeed, it is insufficient under Rule 341(e)(7), the motion to strike is denied.  

Nevertheless, we have reviewed each reference in the record cited by plaintiff in the statement of facts.  Each time the issue of safety warnings arose, it was pointed out that this issue was raised with regard to notice.  Plaintiff had contended that Paschen was exclusively responsible for safety and was required to have a supervisor on site at all times.  Also, plaintiff argues before us that evidence of safety booklets constituted prior warnings to plaintiff and related to contributory fault on his part and was therefore inadmissible.  Paschen countered that provisions in other agreements and the safety booklet provided to plaintiff by his employer were relevant to show that other contractors had a responsibility to notify Paschen of safety violations.  Thus, Paschen argues, the testimony elicited from plaintiff and others related to whether Paschen was to be notified of unsafe conditions.  Paschen argued repeatedly that such notice was not afforded them.  Each time this issue arose, moreover, the trial court instructed the jury that any such testimony was directed at notice of a defective condition and proximate cause only.  The court added each time that if plaintiff proved all the propositions of his case under the Act, then it is not a defense that the conduct of the plaintiff, his coworkers or his employer contributed to cause the injury.  The correct state-ment of law given each time notice or proximate cause evidence was adduced, sufficiently and properly limited the effect of that evidence.  There was no error.

Plaintiff next contends that the court erred in allowing Toole to testify as to interpretation of a contract.  Plaintiff asserts that Toole varied unambiguous terms of a contract, and that he interpreted legal duties when there was no showing that he was qualified to do so.  The following colloquy occurred:

"MR. PATTON [defendant's attorney]:  
Do you have an opinion as to whether or not that language requires a general contractor to have someone present at all times, all seconds, minutes, hours from the minute the project starts to the minute the project ends?

MR. LAWLOR [plaintiff's attorney]:  Your honor, I have an objection on 213.

THE COURT:  Sidebar.

* * *

MR. LAWLOR:  Well, the fact is that it's never been disclosed that he will try to interpret something--the contract is what it says.  The contract is a contract.  He can't come in here and give his own interpretation.  He never disclosed that.  The only thing he disclosed in his deposition--first he said I didn't review it.  Then after prompting he said maybe I did see it less than half an hour.

* * *

MR. LAWLOR:  These were never disclosed.  These are not opinions he just read.  He just read something about a couple lines about a subject matter.  Now he's coming in and wants to completely broaden and expand opinions--

MR. PATTON:  Mr. Lawlor, you challenged.  Now it's up to--

MR. LAWLOR:  Where is the deposition that says these things were asked, and he gave those answers.  He never did.  If anything he says I don't know what it says in the contract.

* * *

THE COURT:  The objection is overruled

* * *

THE COURT: The point is if he's inter-preting.  He can make reference to a particu-lar document and still give the same opinion that he gave at the dep.

* * *

MR. LAWLOR:  You have this guy interpret-ing the contract contrary to--

MR. PATTON:  That's his deposition, Judge, all of his opinions.

THE COURT:  The objection is overruled.  Let's proceed.

* * *

MR. PATTON:  You have seen that provi-sion is that correct?

[DR. TOOLE]:  In this contract, yes.

Q.  
Do you have an opinion as to whether or not a general contractor has to have a person retained by them working for them on the job site at the Juvenile Detention Center at all times work was being performed?

A.  I don't based on that contract - that statement does not say it, and that's cer-tainly not custom and practice in the industry.

Q.  What do you [
sic
] by it's not custom and practice in the industry? 

A.  There often will be some type of superintendence clause that says something about having competent superintendent approved by the owner.  That's typical.  But you don't expect that superintendent to be on site every second of the day and certainly not monitoring every work.

* * *

Q.  
In terms of your review of the contract and the custom and practices in the industry and all of the standards for that matter does a general contractor, Paschen\ Rausch, at the Juvenile Detention Center is it required to inspect the ladders and hammers and drills and so on and so forth of a subcontractor?

MR. LAWLOR:  Objection, leading.

THE COURT: Overruled.

A.  I have never heard of a general contractor ever doing that, and I can also state OSHA does not require it.  As far as I can tell this contract does not require it either.  It just doesn't happen in the indus-try that way."  (Emphasis added.)

We have carefully reviewed the trial transcript in the record.  The issue raised by plaintiff on appeal was only raised during the sidebar following the first question quoted above.  Plaintiff's counsel objected based on Rule 213 and also that Toole was interpreting the contract without the qualifications to do so.  After a lengthy sidebar and an examination of Toole's deposition testimony, the able trial court determined that the opinion being elicited had been disclosed during discovery and was properly admissible pursuant to Rule 213.

Moreover, it was made clear during the sidebar conference that Toole, as an engineering expert with experience in the con-struction industry, had been disclosed through interrogatory answers and through his deposition testimony as someone who could discuss construction contracts and industry practice.  He was not rendering a legal opinion, but disclosed his opinions and under-standing of what is required in the construction industry with regard to safety precautions.  The court overruled the objection of plaintiff, indicating that the opinions were not only disclosed under Rule 213, but were proper due to Toole's credentials and experience with such contracts in the construction industry.  No objection was raised to the next opinion question, so any issue as to it is waived.  With regard to the third question, the objection of leading was raised and properly overruled. 

Thus, plaintiff only raised the issue of improper interpreta-tion of a contract as to the first objected-to question.  The objection was properly overruled.  No error occurred.

Plaintiff further contends that the trial court erred when it barred his witness, Roberto Del Raso, from testifying as to any opinion testimony.  Del Raso had been disclosed as a Rule 213(f) factual witness, and not under Rule 213(g) relating to opinion witnesses.  Del Raso was not deposed by any party.  The record indicates that the trial court carefully threaded through the distinction between Rule 213(f) and Rule 213(g).  The court indi-cated during a sidebar conference that Del Raso could testify as to his factual observations, such as that he, Del Raso, used the ladder during two shifts on the day of the occurrence in the presence of Paschen's employees.  The court indicated such testi-mony was factual, not opinion testimony.  The court was correct.  
Seef v. Ingalls Memorial Hospital
, 311 Ill. App. 3d 7, 724 N.E.2d 115 (1999).  

The court prohibited Mr. Del Raso, and so informed him personally, from testifying as to any opinion whether the ladder was unsteady or unsafe, safe or suitable.  The witness could, however, testify that he worked with the ladder, that he worked a particular shift, and that he worked with Paschen's employees on the day of the occurrence.  The witness, so informed, then testi-tied concerning his factual observations.  There was no error.

Next, plaintiff contends that the trial court erred when it denied his motion for a directed verdict on the issue of whether Paschen had charge of the work under the Act.  Whether Paschen has charge of the work is a question of fact determined by examining the totality of the circumstances.  
Konieczny v. Kamin Builders, Inc.
, 304 Ill. App. 3d 131, 135, 709 N.E.2d 695, 698 (1999).  The following factors are considered:  (1) supervision and control of the work; (2) retention of the right to supervise and control the work; (3) constant participation in ongoing activities at the job- site; (4) supervision and coordination of subcontractors; (5) responsibility for taking safety precautions at the jobsite; (6) authority to issue change orders; (7) right to stop work; (8) ownership of equipment used at the jobsite; (9) familiarity with construction customs and practices; and (10) ability to assure worker safety or alleviate equipment deficiencies or improper work habits.  
Cockrum v. Kajima International, Inc.
, 163 Ill. 2d 485, 492-93, 645 N.E.2d 917, 920 (1994).

At trial, Paschen presented evidence that it did not have supervision or control of the work, and did not have ownership of the equipment used by the subcontractor.  Although plaintiff also presented substantial evidence concerning the other factors rele-vant to the "in charge of" issue, a court cannot reweigh evidence and set aside a verdict merely because the jury could have drawn different conclusions or inferences.  
McClure v. Owens Corning Fiberglass Corp.
, 188 Ill. 2d 102, 132, 720 N.E.2d 242, 257 (1999).  Since the evidence demonstrated a factual dispute, a directed verdict would be inappropriate and the trial court did not err when it refused to grant plaintiff's motion.

Plaintiff's final contention is that the trial court erred in denying his motions for a judgment n.o.v., or alternatively, for a new trial.  A directed verdict, or judgment n.o.v., is proper only if all of the evidence, when viewed in the light most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict can stand.  
Pedrick v. Peoria & Eastern R.R. Co.
, 37 Ill. 2d 494, 510, 229 N.E.2d 504, 513-514 (1967).  Where the evidence shows a considerable dispute of facts, or where the resolution of conflicting evidence may be decisive of the outcome, a judgment n.o.v. is inappropriate.  
Pempek v. Silliker Laboratories, Inc.
, 309 Ill. App. 3d 972, 982, 723 N.E.2d 803, 812 (1999).  Our standard of review of a denial of a JNOV is 
de  novo
.  
McClure v. Owens Corning Fiberglass Corp
., 188 Ill. 2d at 132,  720 N.E.2d at 257.

Here, plaintiff's witness, Ver Halen, testified that, at the time of plaintiff's accident, the ladder was at the end of its useful life and exhibited signs of extensive wear rendering it unsafe.  Ver Halen also noted the missing friction feet on the ladder.  He further testified that plaintiff had no alternative but to place the ladder parallel to the wall and straddle the ladder.  Ver Halen concluded that the condition of the ladder, and not the fact plaintiff straddled the ladder, caused it to fall.  

However, both plaintiff and his foreman, Kelly, testified that they used the ladder on numerous occasions that night and found it safe.  Plaintiff never told Kelly he felt unsafe using the ladder.  Paschen's expert witness, Meyers, testified that straddling and rocking a ladder placed an inappropriate side load on the ladder, causing it to fall.  He stated that even a new lad-der would fall under those circumstances.  Hyre's vice president, Gartland, testified that it was not Hyre's practice or procedure to straddle and rock ladders.  Finally, Paschen's expert witness, Toole, testified that plaintiff could have accomplished his job using the ladder properly.  Since the foregoing evidence presented a considerable factual dispute regarding whether  the dangerous condition of the ladder or plaintiff's straddling and rocking the ladder proximately caused his injuries, the trial court properly denied plaintiff's motion for a judgment n.o.v.

Plaintiff alternatively moved for a new trial, which the trial court also denied.  A trial court will grant a motion for a new trial if the verdict is contrary to the manifest weight of the evidence.  
McClure
, 188 Ill. 2d at 132, 720 N.E.2d at 257.  A verdict is against the manifest weight of the evidence where the " 'opposite conclusion is clearly evident or where the findings of the jury are unreasonable, arbitrary and not based upon any of the evidence.' "  
McClure
, 188 Ill. 2d at 132, 720 N.E.2d at 257 quoting 
Villa v. Crown Cork & Seal Co.
, 202 Ill. App. 3d 1082, 1089 (1990).  Our standard of review of a trial court's denial of a motion for a new trial is abuse of discretion.  
McClure
, 188 Ill. 2d at 132-33, 720 N.E.2d at 257.

As discussed above, the evidence supported the jury's verdict that plaintiff's action in straddling and rocking the ladder, and not any violations of the Act, proximately caused plaintiff's injuries.  Therefore, the trial court did not abuse its discretion when it denied plaintiff's motion for a new trial.

For the foregoing reasons, we affirm the circuit court.

Affirmed.

CAMPBELL, P.J., and KARNEZIS, J., concur.

FOOTNOTES
1:
Although the Illinois legislature repealed the Act as of February 14, 1995, the Illinois Supreme Court has held that the repeal applies prospectively only and does not affect cases accruing under the Act before the effective date of the repeal.  
Atkins v. Deere & Co.
, 177 Ill. 2d 222 (1997).  The events giving rise to plaintiff's claim occurred in 1994 and his claim, therefore, is not affected by the repeal.