DARLEEN CLAYTON, Special Adm'r of the Estate of Richlyn Cork, Deceased, Plaintiff-Appellee, v. THE COUNTY OF COOK, Defendant- Appellant.

First District (4th Division) No. 1—02—1009

Opinion filed December 11, 2003.—Rehearing denied February 20, 2004.—Modified opinion filed February 26, 2004.

Richard A. Devine, State's Attorney, of Chicago (Patrick T. Driscoll, Jr., Thomas Burnham, and Marcie Thorp, Assistant State's Attorneys, of counsel), for appellant.

Law Firm of Michael W. Rathsack, of Chicago (Mark E. McNaola, Alice E. Dolan, and Michael W. Rathsack, of counsel), for appellee.

PRESIDING JUSTICE QUINN delivered the opinion of the court: Defendant, the County of Cook, doing business as Cook County Hospital (Cook County), appeals from a retrial in which a $5.3 million judgment was entered on a jury verdict in favor of plaintiff, Darlene Clayton, special administrator of the estate of Richlyn Cork. The first trial had resulted in a verdict for defendant. Plaintiff appealed and this court reversed the judgment, based upon both defense counsel's improper argument and discovery violations under Supreme Court Rule 213(g) (177 Ill. 2d R. 213(g)). See *Clayton v. County of Cook*, No. 1—97—1825 (1999) (unpublished order under Supreme Court Rule 23). Following retrial, defendant's posttrial motion was denied.

Defendant appeals, arguing that the circuit court abused its discretion by: (1) allowing new opinions from plaintiff's expert witness in violation of Rule 213(g); (2) allowing evidence of the treating physician's failure to insert an arterial blood gas (ABG) line into Cork; (3) barring any evidence regarding the circumstances of Cork's initial injury; (4) allowing Dr. Robert Kirschner, a Cook County assistant medical examiner, to testify with respect to opinions that allegedly were outside the scope of his medical expertise; (5) refusing to instruct the jury on sole proximate cause and allowing damages based on Cork's habit of industry; and (6) denying defendant's motion for a new trial based on the conduct of plaintiff's counsel, including the injection of personal beliefs in closing argument, argument of facts not in evidence and violations of rulings on motions *in limine*.

For the reasons that follow, we reverse and remand for a third trial.

## BACKGROUND

On March 12, 1991, plaintiff, Cork's mother, found Cork, then 12 years old, in her bedroom lying unconscious with a cord wrapped around her neck. The cord was attached to the closet door. Cork was unable to breathe on her own, was unresponsive and had ligature marks on her neck. Cork first was transported by ambulance to St. Francis Hospital (St. Francis) in Evanston, where she was intubated, which required the placement of a tube through her nose and back of her throat into the windpipe, or trachea, for attachment to a mechanical ventilator to assist in breathing. She was transferred to Cook County later that evening.

During the first few days of her hospitalization at Cook County, Cork remained intubated and comatose. She developed several complications, including acute respiratory distress syndrome (ARDS), in which the lining of the lungs leaks, filling the lung sacs with fluid. ARDS also causes scab-like material to fill up the lung sacs, making it difficult to keep blood oxygenated and to remove carbon dioxide. In addition, Cork developed two types of pneumonia and empyema, an infection inside or outside the lungs characterized by pockets of pus. A lung with chronic empyema is at risk of collapse, requiring surgery. Due to Cork's ARDS and empyema, her left lung was markedly "stiff" or adherent to the chest wall.

In light of her condition, Cork remained attached to a mechanical ventilator to the extent that a tracheostomy was required. A tracheostomy is a surgical procedure to open the trachea and also refers to the formation of the opening or the opening itself. Repeated efforts were made to remove the secretions from Cork's lungs by

pounding on her chest and suctioning out the material through the endotracheal tube, which was replaced gradually by smaller tubes until Cork was able to breathe on her own. In addition, Cork was given two different courses of antibiotics to treat her pneumonia.

On April 27, 1991, Cork was discharged from Cook County in stable condition, but with residual ARDS. Hospital records showed that a laryngoscopy was performed, but not a bronchoscopy. As part of her discharge instructions, Cork was scheduled for an April 29 appointment at the Rehabilitation Institute to be evaluated for brain damage and a May 2 appointment at the Fantus Pediatric Surgery Clinic. She also was instructed to call the pediatric intensive care unit or go to the emergency room at Cook County if she had difficulty breathing.

On the morning of May 3, 1991, Cork began to experience difficulty breathing after inhaling tar fumes. Cork panted, gasped for air and coughed up phlegm for a period of 15 minutes. She was brought to the emergency room at St. Francis, where she exhibited symptoms of cyanosis and hypoxia, or lack of oxygen. Her oxygen saturation level dropped to 80%. A chest X ray revealed that Cork had pneumonia in her left lung. Cork immediately was administered 100% oxygen, which raised her saturation level into the mid-90s.

At 9 p.m. that evening, Cork again was transferred to Cook County. She was admitted directly into the pediatric intensive care unit (PICU), where she had been admitted previously. Cork had difficulty breathing, tachycardia (fast heart rate), high blood pressure and nasal flaring. ABG tests showed continuing respiratory problems. Cork was observed that evening.

On May 4, 1991, at 11 a.m., Cook County physicians attempted to intubate Cork, but were unsuccessful due to resistance in her trachea, allegedly from stenosis, an internal tracheal obstruction, created by scarring from her previous tracheostomy. Doctors administered a muscle relaxant that paralyzed Cork, allowing her to be ventilated. Cork's oxygen saturation level dropped to 40% while doctors attempted to intubate her. Surgical, preoperation and postoperation notes all stated that the intubation tube was blocked by a stenosis.

Cork was taken to the operating room at 1 p.m. for an emergency tracheostomy. Doctors attempted to insert a number of tracheal tubes in successive sizes ranging from large to small, but had difficulty inserting the tube further into her trachea. Doctors also had difficulty "bagging" Cork to keep her oxygenated because of an obstruction distal (further down from) the tracheal tube. "Bagging" is the process of manually ventilating a patient with a face mask and an "Ambu" bag, or by attaching the bag to the endotracheal tube.

During the tracheostomy, Cork's oxygen saturation level had dropped to 40%, resulting in brain damage. Cork died on May 8, 1991. Although the operating room record sheet for May 4, 1991, listed preoperative and postoperative diagnoses of stenosis, no stenosis was found during the autopsy.

On April 10, 1992, plaintiff filed a two-count complaint against defendant, based upon the allegedly negligent medical care given to Cork in April and May 1991. This case initially was tried in January 1996, resulting in a jury verdict in favor of defendant. As stated previously, this court reversed the verdict and remanded for a new trial based on improper argument of defense counsel and discovery violations. The case was retried in May 2001. The following evidence pertinent to the disposition of this appeal was adduced at retrial.

Dr. Madelyn Kahana, a pediatric intensivist, specializing in pediatrics, anesthesiology and critical care, testified as an expert witness for plaintiff. Over defendant's Rule 213(g) objection, Dr. Kahana testified that on May 3, 1991, Cork presented to Cook County with a tracheal obstruction. Cook County delayed the establishment of her airway and, once the decision had been made to place an endotracheal tube, it was done without supervision, in the wrong place, by people who were inexperienced. According to Dr. Kahana, Cork died due to a lengthy period of hypoxia, or lack of oxygen. She testified, "at best, most of the night [on May 3], a second year pediatric resident [was] watching her; that he was assisted by a first year surgical resident and that *** was insufficient expertise to recognize the escalation of her symptoms." Defendant moved to strike Dr. Kahana's testimony for violating Rule 213(g) with respect to the lack of supervision during the second admission. The circuit court directed plaintiff's counsel to retract Dr. Kahana's statements. The court stated, "[y]ou need to clear this up because this is a problem. I read through her 213 [deposition]. Nothing like this is in here." Dr. Kahana explained that Dr. Peter Bridges, a first-year resident, monitored Cork throughout the night, but she noted repeatedly his failed attempts from 8:30 p.m. to 11:30 p.m. to insert an arterial line to measure carbon dioxide levels. Defense counsel objected based on a motion *in limine* barring plaintiff from introducing evidence relating to the inability of Dr. Bridges to start an arterial line. The circuit court sustained defendant's·objection. Dr. Kahana testified it was not inappropriate for a resident to be unable to insert an arterial line. She clarified that the fact a resident was watching the patient overnight on May 3 was not a deviation from the standard of care.

Dr. Kahana testified that Dr. Bridges had ordered an X ray at 9:45 a.m. on May 4 to rule out airway narrowing or stenosis. At 10 a.m.,

there was sufficient time to bring Cork to the operating room so that an airway management specialist could perform a bronchoscopy to determine the cause for her labored breathing. The 11 a.m. ABG test result was abnormal, which reflected an inability to remove carbon dioxide in the face of continued difficulty breathing.

Dr. Kahana did not criticize the failure to diagnose the tracheal stenosis; rather, she was critical of the failure to have an intervention to treat the stenosis. In Dr. Kahana's opinion, the standard of care required that Cork should have been taken to the operating room at 7 a.m. on May 4. Severe breathing problems were noted at 7:30 a.m., but there was no intervention until noon. Dr. Kahana testified that, by the time Cork had the emergency tracheostomy, her brain was damaged irreversibly.

Prior to Dr. Kahana's cross-examination, plaintiff's counsel asked her if she had criticism with respect to a lack of supervision for the second admission, with the exception of the intubation on May 4, to which she replied, "[t]hat would require a bit of an explanation." Defendant moved for a mistrial. The court noted outside the presence of the jury that Dr. Kahana's opinion with respect to lack of supervision was not disclosed pursuant to Rule 213(g). During the hearing in chambers, Dr. Kahana noted that her new opinion "doesn't play a large role in what happened to this child because they still had time to do something about her care that morning when she was seen by more senior people." The court reiterated that Dr. Kahana's opinion was a surprise, but denied defendant's motion for a mistrial.

The circuit court then attempted to remedy the Rule 213(g) problem by asking Dr. Kahana in front of the jury, "[a]t the time you disclosed your opinions and gave your deposition, you had no criticism of Cook County Hospital for its failure to supervise its residents on May 3rd from the time of admission until 12 o'clock the next day, is that correct?" Dr. Kahana responded, "[t]hat's correct."

Defendant also moved to strike Dr. Kahana's testimony based upon the Rule 213(g) violation. Following further argument on defendant's motion, the court stated to plaintiff's counsel that he was supposed to have cleared up the disclosure of Dr. Kahana's new opinion, but failed to do so. It is unclear from the record whether the court ruled on defendant's motion to strike Dr. Kahana's testimony.

On cross-examination, Dr. Kahana testified that Cork had aspirated gastric contents that could result in significant injury to lung sacs and tissue. Dr. Kahana agreed that Cork had pneumonia, empyema and ARDS during her first admission to Cook County. Dr. Kahana stated that patients are at an increased risk for difficulties during intubation if they have ARDS because during instrumentation

of the airway, the patient may become hypoxic or a bronchospasm could develop. Dr. Kahana then explained that Cork may have been in the recovery phase of ARDS during the second admission, but she believed that ARDS and bronchospasm did not cause the hypoxia which occurred during the intubation.

Defendant had moved *in limine* to bar Dr. Kirschner from testifying that the efforts at intubating on May 4 failed because Cork had a tracheal stenosis. Defendant argued that Dr. Kirschner did not find any evidence of a tracheal stenosis in the autopsy he performed on May 9, 1991, and did not have the expertise to testify with respect to what doctors would have seen had they performed a bronchoscopy. The circuit court heard *voir dire* testimony as to Dr. Kirschner's experience outside the presence of the jury and denied defendant's motion *in limine*, finding that any lack of experience went to the weight of the testimony.

Dr. Kirschner then testified before the jury on direct examination that his opinions remained the same as when he testified in the first trial. Dr. Kirschner's external examination showed evidence of a tracheostomy and a previous tracheostomy scar. There was no evidence of a stenosis at the time of the autopsy, but there was a previous functional stenosis based upon a "very marked inflammation of the trachea." The functional stenosis caused hypoxic encephalopathy. Dr. Kirschner further testified that a bronchoscopy on May 3, 1991, would have visualized the presence of the stenosis and that neither pneumonia nor empyema contributed to Cork's death.

On cross-examination, Dr. Kirschner testified that the cause of death was the encephalopathy as a consequence of injuries Cork sustained in March 1991. Although Dr. Kirschner's death certificate noted that the immediate causes of death were anoxic encephalopathy and hanging, Dr. Kirschner was precluded from testifying about the hanging. The death certificate also noted that pneumonia with empyema was a significant condition contributing to the cause of death. Dr. Kirschner testified that when he performed the autopsy, he was aware of the asphyxial injuries Cork sustained.

On redirect examination, Dr. Kirschner clarified that pneumonia and empyema were proximate causes of Cork's death, but the medical cause of death clearly was the stenosis that led to the anoxic encephalopathy. Dr. Kirschner did not list the functional stenosis on the autopsy report because it was a clinical interpretation, which is not included in the report.

Following the presentation of testimony and closing argument, the jury returned a verdict in favor of plaintiff on the wrongful death count in the amount of $4.3 million and $1 million for the survival

count. Defendant filed a posttrial motion, which the circuit court denied. Defendant appeals.

## ANALYSIS

### I

Defendant initially asserts that plaintiff's opinion witness, Dr. Kahana, expressed opinions and bases for her opinions in her testimony that were not disclosed pursuant to Rule 213(g). Defendant argues that the circuit court abused its discretion by failing to strike Dr. Kahana's testimony or granting a mistrial. Defendant maintains that Dr. Kahana reviewed additional materials after her deposition and rendered new opinions at trial that had not been disclosed, causing unfair prejudice. Defendant challenges the presentation of the following opinions: (1) a deviation from the standard of care occurred for failure to supervise the medical residents; (2) the location and personnel for the May 4 intubation were improper; (3) the completion of an intubation upon Cork's second admission was urgent; (4) Cook County doctors cut out a piece of the trachea when they performed the tracheostomy, which explains the lack of evidence of stenosis; (5) Cork did not have pneumonia; (6) no documents reflected Cook County's concern regarding Cork's ability to breathe; (7) Dr. Bridges' decision to order a chest X ray to rule out airway narrowing would not treat the stenosis; (8) the chest X rays were of poor quality; (9) Cork experienced a rise in the level of carbon dioxide from her May 3 admission until the time of her intubation; (10) Cork could not possibly have had a stiff lung because her respiratory rate was set at 25, whereas if she had a stiff lung, the respiratory rate would have been 50 or 60; (11) the fact that Cork was hungry did not mean she could not have had an airway obstruction or tracheal stenosis; (12) the electrocardiogram (EKG) reading from 6 a.m. on May 4 showed that Cork experienced irregular heartbeats that could have been seen on an EKG strip; and (13) a day after the tracheostomy, a large leak developed in the tube that allowed a volume loss of over half the oxygen.

Plaintiff responds that the criticism by Dr. Kahana regarding lack of supervision was retracted later, did not address the cause of Cork's death and, therefore, was not prejudicial. Plaintiff avers that the record affirmatively demonstrates the court exercised its discretion in rendering its decision to remedy the violation and that defendant failed to show an abuse of discretion. In addition, plaintiff contends that the court ruled upon countless Rule 213 objections based on the facts and disclosure pertinent to each situation and that no error occurred.

■ The admission of evidence is within the circuit court's discretion, and the court's ruling will not be reversed absent an abuse of discretion. *Gill v. Foster*, 157 Ill. 2d 304, 312-13, 626 N.E.2d 190 (1993). An abuse of discretion may be found only where *no reasonable man* would take the view adopted by the circuit court. *Smith v. Silver Cross Hospital*, 339 Ill. App. 3d 67, 74, 790 N.E.2d 77 (2003) (*Smith*).

At retrial, the applicable version of Rule 213(g) provided:

"An opinion witness is a person who will offer any opinion testimony. Upon written interrogatory, the party must state:

(i) the subject matter on which the opinion witness is expected to testify;

(ii) the conclusions and opinions of the opinion witness and the bases therefor; and

(iii) the qualifications of the opinion witness;

and provide all reports of the opinion witness." 177 Ill. 2d R. 213(g).

The committee comments for Rule 213(g) then in effect specified that, "in order to avoid surprise, the subject matter of all opinions must be disclosed pursuant to this rule and Supreme Court Rule 218, and that no new or additional opinions will be allowed unless the interests of justice require otherwise." 177 Ill. 2d R. 213(g), Committee Comments.[1]

■ Illinois Supreme Court rules on discovery are *mandatory* rules of procedure subject to strict compliance by the parties. *Seef v. Ingalls Memorial Hospital*, 311 Ill. App. 3d 7, 21, 724 N.E.2d 115 (1999) (*Seef*); *Department of Transportation v. Crull*, 294 Ill. App. 3d 531, 537, 690 N.E.2d 143 (1998) (*Crull*). Discovery rules allow litigants to ascertain and rely upon the opinions of experts retained by their adversaries. *Crull*, 294 Ill. App. 3d at 537, citing *Chicago & Illinois Midland Ry. Co. v. Crystal Lake Industrial Park, Inc.*, 225 Ill. App. 3d 653, 658, 588

---

[1]The newly amended version of Rule 213 maintains strict disclosure requirements but states in paragraph (g), "a cross-examining party can elicit information, including opinions, from the witness" without making disclosures as required under paragraph (f). 210 Ill. 2d R. 213(g). The current Committee Comments state, "[p]arties are to be allowed a full and complete cross-examination of any witness and may elicit additional undisclosed opinions in the course of cross-examination." 210 Ill. 2d R. 213(g), Committee Comments. Paragraph (k) provides, however, that Rule 213 "is to be liberally construed to do substantial justice between or among the parties." 210 Ill. 2d R. 213(k). The Committee Comments under paragraph (k) state that Rule 213 "is intended to be a shield to prevent unfair surprise but not a sword to prevent the admission of relevant evidence on the basis of technicalities." 210 Ill. 2d R. 213(k), Committee Comments.

N.E.2d 337 (1992). Parties have a duty to supplement seasonably or amend prior answers or responses whenever new or additional information subsequently becomes known to that party. 177 Ill. 2d R. 213(i). To allow either side to ignore the plain language of Rule 213 defeats its purpose and encourages tactical gamesmanship. *Crull*, 294 Ill. App. 3d at 537.

■ The *Crull* court stated, "[t]rial courts should be more reluctant under Rule 213 than they were under former Rule 220 (1) to permit the parties to deviate from the strict disclosure requirements, or (2) not to impose severe sanctions when such deviations occur." 294 Ill. App. 3d at 539. However, neither Rule 213 nor its committee comments provide the circuit court with a guideline describing how to formulate a remedy once a violation occurs. The most important function of a court of review is to provide direction to the circuit court as to how to address issues that arise at trial. Consequently, we next address the issue of what remedies a circuit court has available to it when a violation of Rule 213 occurs at trial.

■ A circuit court has the discretion to shape a remedy following a violation of Rule 213, including the exclusion or limitation of the scope of expert testimony. *Boland v. Kawasaki Motors Manufacturing Corp., USA*, 309 Ill. App. 3d 645, 652-53, 722 N.E.2d 1234 (2000) (*Boland*). The formulation of a remedy should reflect the underlying purpose of Rule 213 by preventing unfair prejudice or the deprivation of a party's ability to prepare adequately his case through no fault of his own.

■ First, upon a party's Rule 213 objection, the proponent of the evidence has the burden to prove the opinions were provided in a discovery deposition or Rule 213 interrogatory or answer. 177 Ill. 2d Rs. 213(g), (i); see also 210 Ill. 2d R. 213(g). A circuit court has the discretion to review Rule 213 objections in chambers to determine whether opinions were disclosed properly. *Seef*, 311 Ill. App. 3d at 22.

Next, in the event the circuit court finds that a party has violated Rule 213 disclosure requirements and depending upon the severity of the violation, the opposing party has the option of moving to: (1) strike only the portion of the testimony that violates the rule; (2) strike the witness's entire testimony and bar the witness from testifying further; and (3) have a mistrial declared. The circuit court has the discretion to determine the appropriate remedy. *Boland*, 309 Ill. App. 3d at 652-53. The court must ensure that the applicable sanction allows for a fair trial rather than punish the party that committed the violation. *Sobczak v. Flaska*, 302 Ill. App. 3d 916, 926, 706 N.E.2d 990 (1998) (*Sobczak*); *Flanagan v. Redondo*, 231 Ill. App. 3d 956, 963, 595 N.E.2d 1077 (1991). Each case presents unique factual circumstances,

which should be considered in determining whether a sanction is imposed. *Boatmen's National Bank of Belleville v. Martin*, 155 Ill. 2d 305, 314, 316-17, 614 N.E.2d 1194 (1993) (*Boatmen's National Bank*) (defendant was not prejudiced by undisclosed testimony because it was cumulative of other testimony).

The appellate court has addressed the issue of which sanctions are appropriate in many cases. See *Nassar v. County of Cook*, 333 Ill. App. 3d 289, 303-04, 775 N.E.2d 154 (2002) (circuit court did not abuse its discretion by admitting challenged testimony because plaintiffs could not establish prejudice where the testimony was cumulative of previously introduced testimony); *Prairie v. Snow Valley Health Resources, Inc.*, 324 Ill. App. 3d 568, 574-77, 755 N.E.2d 1021 (2001) (affirming circuit court's decision to grant a new trial upon a determination that expert witness's testimony, which went to the heart of the case, deviated from that disclosed); *Regala v. Rush North Shore Medical Center*, 323 Ill. App. 3d 579, 585, 752 N.E.2d 443 (2001) (redirect examination of expert witness went beyond the scope of cross-examination by eliciting new testimony previously undisclosed under Rule 213, warranting reversal and remand for a new trial); *Susnis v. Radfar*, 317 Ill. App. 3d 817, 829, 739 N.E.2d 960 (2000) (*Susnis*) (refusal to allow undisclosed expert opinion on deviation from standard of care was not an abuse of discretion where plaintiff was allowed to elicit same testimony after rephrasing the question); *Copeland v. Stebco Products Corp.*, 316 Ill. App. 3d 932, 945-46, 738 N.E.2d 199 (2000) (*Copeland*) (circuit court's failure to declare a mistrial was a clear abuse of discretion under totality of the circumstances, where surprise undisclosed testimony unfairly undermined the defense strategy and undercut defendant's cross-examination); *Seef*, 311 Ill. App. 3d at 24 (cumulative effect of erroneous admission of undisclosed opinions mandated reversal and remand to the circuit court for a new trial); *Boland*, 309 Ill. App. 3d at 652 (circuit court had discretion to conclude that both parties violated Rule 213 disclosure requirements and to fashion a remedy); *LoCoco v. XL Disposal Corp.*, 307 Ill. App. 3d 684, 691, 717 N.E.2d 823 (1999) (circuit court did not abuse its discretion by barring opinion witness testimony as a sanction for a party's failure to disclose); *Warrender v. Millsop*, 304 Ill. App. 3d 260, 270-71, 710 N.E.2d 512 (1999) (circuit court abused its discretion by failing to exclude testimony of defendant's medical expert and surveillance videotape of personal injury plaintiff as sanctions for defendant's violation of discovery rules); *Adami v. Belmonte*, 302 Ill. App. 3d 17, 24, 704 N.E.2d 708 (1998) (circuit court did not abuse its discretion by barring plaintiff from calling an opinion witness identified only two

weeks before trial in violation of Rule 213). Logically, it follows that the severity of the sanction imposed be dependent upon the prejudicial impact of the Rule 213 violation.

The most common scenario presented to this court is that the issue of a Rule 213 violation comes to the circuit court's attention during the testimony of an expert witness who has expressed an opinion not previously disclosed. The real problem is that, all too often, the witness already has expressed this "new" opinion when an objection is made. Unfortunately, merely striking the portion of the testimony that was violative of Rule 213 will not always be sufficient to remedy the prejudice to the opposing party. The discussion as to whether the testimony was violative of Rule 213 and, if so, what remedy should be applied should be held outside the presence of the jury. See *Seef*, 311 Ill. App. 3d at 22. Initially, this discussion may be held outside the presence of the witness as well, but the circuit court may find it useful to have the witness present so he or she can be voir dired. The presence of the witness also will facilitate an explanation of the nature of the violation to the expert and what steps must be taken to prevent further improper testimony. To remedy the prejudice that already has occurred, the circuit court can fashion whatever questions and answers would be most appropriate.

One way to retract the offensive testimony would be for the circuit court or the attorney who elicited the testimony to ask the witness, "To make things clear, in your testimony today, you are not saying [the subject matter of the Rule 213 violation—*e.g.*, 'the standard of care was violated by having medical residents, Dr. A and Dr. B, treat the patient']." Phrasing the question in this manner will allow the witness to retract the testimony that violated Rule 213 without falsely testifying that he or she does not have such an opinion. Of course, the circuit court has the discretion to determine the appropriate remedy in any given case. The parties should assist the circuit court in this determination by suggesting workable solutions rather than merely asking for a mistrial on the one hand, or arguing that no remedial action is needed on the other.

■ In determining whether striking the witness's entire testimony and barring the witness from testifying further are appropriate sanctions, the following factors must be considered: "(1) surprise to the adverse party; (2) the prejudicial effect of the witness' testimony; (3) the nature of the witness' testimony; (4) the diligence of the adverse party; (5) whether objection to the witness' testimony was timely; and (6) the good faith of the party calling the witness." *Boatmen's National Bank*, 155 Ill. 2d at 314; see also *Sobczak*, 302 Ill. App. 3d at 926.

■ Finally, the circuit court has the discretion to declare a mistrial.

*Copeland*, 316 Ill. App. 3d at 944. A mistrial is warranted when the Rule 213 violation "is of such character and magnitude as to deprive a party of a fair trial and the party seeking the mistrial demonstrates actual prejudice as a result." *Copeland*, 316 Ill. App. 3d at 944. In other words, if a less severe sanction cannot eliminate unfair prejudice, a mistrial must be declared. See *Copeland*, 316 Ill. App. 3d at 945-46. The following factors are relevant to assess prejudice: "(1) the strength of the undisclosed evidence; (2) the likelihood that prior notice could have helped the defense discredit the evidence; (3) the feasibility of a continuance; and (4) the willfulness of the party in failing to disclose." *Copeland*, 316 Ill. App. 3d at 945. The failure to disclose opinion testimony under Rule 213 should not allow a party to gain a tactical advantage by undermining the adverse party's strategy or undercutting cross-examination. See *Copeland*, 316 Ill. App. 3d at 945-46. "Rule 213 is designed to give those involved in the trial process a degree of certainty and predictability that furthers the administration of justice and eliminates trial by 'ambush.' " *Copeland*, 316 Ill. App. 3d at 946, citing *Firstar Bank of Illinois v. Peirce*, 306 Ill. App. 3d 525, 535-36, 714 N.E.2d 116 (1999) (*Firstar Bank*).

With the above principles in mind, a review of the instant record shows Dr. Kahana presented entirely new opinion testimony alleging a lack supervision of defendant's residents. Although plaintiff's Rule 213(g) disclosures were not included in the record, the report of proceedings contains numerous defense objections based upon Rule 213 violations and colloquies between the court and the parties detailing plaintiff's failure to disclose Dr. Kahana's opinions. The record establishes the court knew that Dr. Kahana had not previously disclosed her opinions with respect to supervision because plaintiff's counsel admitted the violation during proceedings held in chambers. Outside the presence of the jury, Dr. Kahana admitted that she presented new opinions and asked the court, "[h]ow can you swear to tell the truth, the whole truth and nothing but the truth when you have a new definition of the whole truth?"

Here, the circuit court directed plaintiff's counsel to retract the error numerous times, but counsel failed to follow the order. The court attempted to remedy the violation by posing the following question to Dr. Kahana in the presence of the jury, "At the time you disclosed your opinions and gave your deposition, you had no criticism of Cook County Hospital for its failure to supervise its residents on May 3rd from the time of admission until 12:00 o'clock the next day." This question solidified rather than remedied the Rule 213(g) violation, because it verified that Dr. Kahana presented new, undisclosed opinions. Significantly, Dr. Kahana's undisclosed opinions provided the

jury with a new negligence theory, namely, that defendant's failure to recognize the escalation in Cork's symptoms due to a lack of proper supervision caused the difficulty that occurred during the intubation and the resulting injury. The court's failure to provide an adequate remedy ·to eliminate the resulting prejudice from Dr. Kahana's undisclosed opinions was an abuse of discretion.

■ The present case involved complex testimony hinging on an explanation as to why defendant's doctors failed to intubate Cork properly. Dr. Kahana's new opinions offered the jury a reason to find that defendant was negligent. This is precisely the situation which Rule 213 was intended to address and no extenuating circumstances exist justifying the violation of the rule in this case. See *Seef*, 311 Ill. App. 3d at 23-24; *Crull*, 294 Ill. App. 3d at 537-38; *Susnis*, 317 Ill. App. 3d at 828-29; *Copeland*, 316 Ill. App. 3d at 938-46; *Firstar Bank*, 306 Ill. App. 3d at 532-36. Contrary to plaintiff's argument, Dr. Kahana's undisclosed opinions affected the outcome of the trial because defendant was surprised and prejudiced as a result.

Accordingly, the erroneous admission of Dr. Kahana's undisclosed opinions regarding supervision of defendant's doctors and the circuit court's subsequent failure to remedy properly plaintiff's Rule 213(g) violation warrants reversal of the jury's verdict and a remand for a new trial. In light of this finding, the remaining objections to Dr. Kahana's testimony need not be addressed here. Further, the parties are admonished strongly that surprise cannot be a component of a third trial in this case. We next will address issues that are likely to recur upon retrial.

## II

Defendant contends that the circuit court abused its discretion by allowing the jury to hear evidence that Dr. Bridges could not place an arterial blood line and denying its subsequent motion for a mistrial. Defendant had moved *in limine* to bar plaintiff from eliciting testimony regarding Dr. Bridges' failure to insert an arterial line overnight on May 3 because no expert witness testified that this was a deviation from the standard of care. The record is unclear as to whether the court granted the motion *in limine*. Nevertheless, defendant specifically points to admitted testimony from Drs. Kahana, Rodriguez, Bridges and Charles Bluestone, and the use of an exhibit recording Dr. Bridges' difficulties, as examples of the court's abuse of discretion.

Plaintiff responds that testimony regarding Dr. Bridges' failure to insert an arterial line was elicited to explain why ABG readings were unavailable as elements of proof in her case. Plaintiff contends the

ABG readings were relevant to overcome the defense that Cork's condition waxed and waned throughout the night, which was inconsistent with stenosis. Plaintiff asserts that if she did not show why no ABG readings were taken overnight, jurors might have concluded that those readings remained normal or that no ABG tests were needed because Cork's condition did not warrant them. Plaintiff also elicited this testimony because defendant presented evidence that Dr. Bridges made a heroic effort to save Cork by staying at her bedside all night. Plaintiff notes that Dr. Kahana testified it was not inappropriate for a resident to not be able to insert an arterial line. In addition, plaintiff argues that most of the contested testimony was admitted without objection.

■ A review of the record shows that, with respect to proffered evidence of Dr. Bridges' inability to insert the arterial line, the circuit court sustained defendant's objections. A circuit court's decision to sustain an objection and instruct the jury to disregard the remark cures the prejudicial impact from the improper statement. *People v. Sims*, 167 Ill. 2d 483, 512, 658 N.E.2d 413 (1995); *Lecroy v. Miller*, 272 Ill. App. 3d 925, 933, 651 N.E.2d 617 (1995). Further, the record does not show that an objection was made when the contested testimony of Drs. Bluestone and Rodriguez was presented to the jury and, therefore, defendant's argument is waived with respect to this testimony. *Illinois State Toll Highway Authority v. Heritage Standard Bank & Trust Co.*, 163 Ill. 2d 498, 502, 645 N.E.2d 896 (1994). In addition, as noted previously, the jury heard testimony from Dr. Kahana that Dr. Bridges' failure to insert the arterial line did not breach the standard of care. It was for the jury to assess the credibility of this testimony, weigh the evidence and resolve any conflicts. *Smith*, 339 Ill. App. 3d at 75.

Accordingly, the circuit court did not abuse its discretion by allowing Dr. Bridges' testimony or by refusing to grant defendant a mistrial based upon the allowance of this testimony.

## III

Defendant argues that the circuit court abused its discretion by barring evidence regarding the circumstances surrounding decedent's initial injury in March 1991. Defendant asserts that the prohibition of this evidence precluded it from presenting a factual finding of the cause of death that was not a result of any negligence by defendant. Defendant contends the preclusion of this evidence was exacerbated when the court allowed Dr. Kirschner to testify that Cork's death was caused by anoxic encephalopathy from a tracheal stenosis. Defendant points out that Drs. Kahana and Gilbert Goldman, an expert witness for the defense, had testified that Cork was injured due to a strangula-

tion. Defendant also maintains that evidence of Cork's cocaine intoxication and hanging is relevant and probative regarding damages.

Plaintiff responds that the circuit court properly exercised its discretion by barring defendant from arguing that Cork's initial traumatic injury was the result of an attempt to commit suicide by hanging and cocaine intoxication. Plaintiff asserts that the standard of care owed to Cork upon admission to Cook County was the same regardless of how she sustained the injury for which she was being treated. According to plaintiff, there was no evidence the specific mechanism of the injury had any bearing on the treatment given to Cork. Plaintiff also points out that, although defendant was prevented from showing that the hanging caused Cork's initial injury, the cause of injury was presented through its expert, Dr. Goldman, who provided a grisly recitation of her physical appearance and condition when found. Plaintiff argues that evidence of Cork's initial injury properly was barred because it was immaterial and highly prejudicial.

The relevance and admissibility of evidence are committed to the sound discretion of the circuit court and its decisions will not be reversed absent a clear abuse of discretion. *Leonardi v. Loyola University of Chicago*, 168 Ill. 2d 83, 92, 658 N.E.2d 450 (1995). Evidence is considered to be relevant when it has " 'any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence.' " *Smith*, 339 Ill. App. 3d at 73-74, quoting *Wojcik v. City of Chicago*, 299 Ill. App. 3d 964, 971, 702 N.E.2d 303 (1998).

"In a medical malpractice action, a plaintiff must prove: (1) the proper standard of care by which to measure the defendant's conduct; (2) a negligent breach of the standard of care; and (3) the resulting injury proximately caused by the defendant's lack of skill or care." *Susnis*, 317 Ill. App. 3d at 826. At issue here is whether the exclusion of evidence of Cork's attempted hanging and cocaine intoxication deprived the jury of relevant and material evidence on the issue of proximate causation.

Our supreme court has found with respect to causation that

"evidence of a previous injury is relevant only if it tends to negate causation or injuries. *** [A] defendant need not be the *only* cause to be held liable for an injury; rather, it is sufficient that the defendant is *a* cause. [Citation.] Moreover, a defendant is not relieved of liability simply because the only injury suffered by a plaintiff is an aggravation of a previous injury. [Citation.] Thus, for a prior injury to be relevant to causation, the injury must make it less likely that the defendant's actions caused any of the plaintiff's injuries or an identifiable portion thereof." (Emphasis in original.)

*Voykin v. Estate of DeBoer*, 192 Ill. 2d 49, 57-58, 733 N.E.2d 1275 (2000).

█ Considering the above authority, a significant distinction must be made in the instant case because at trial, expert witnesses testified as to Cork's previous injuries, but they were barred from testifying as to *how* she sustained those injuries. Dr. Hernan Reyes, then the chairman of the department of surgery at Cook County, testified on behalf of plaintiff that a child found with a strap wrapped tightly around her neck would be assessed as having suffered a traumatic injury that could result in long-term complications and that when Cork first was admitted to Cook County on March 11, 1991, she had suffered an anoxic brain injury due to asphyxiation, or the compression of her trachea. In addition, the jury viewed an overhead projection of a nurse's note that indicated Cork's first admission was due to a suicide attempt. Based upon the foregoing, a reasonable jury could infer that Cork sustained her injuries from an attempted suicidal hanging. As a result, no error was shown.

Addressing defendant's contention that the circuit court improperly excluded evidence of Cork's cocaine intoxication, the argument is waived due to defendant's failure to make an offer of proof. See *In re Estate of Romanowski*, 329 Ill. App. 3d 769, 773, 771 N.E.2d 966 (2002) (*Romanowski*). "A party claiming he has not been given the opportunity to prove his case must provide a reviewing court with an adequate offer of proof as to what the excluded evidence would have been." *Romanowski*, 329 Ill. App. 3d at 773. An adequate offer of proof apprises the circuit court of what the offered evidence is or what the expected testimony will be, by whom it will be presented and its purpose. *Romanowski*, 329 Ill. App. 3d at 773. The failure to make an offer of proof results in a waiver of review of whether the evidence was excluded improperly. *Romanowski*, 329 Ill. App. 3d at 773.

Here, defendant argues that Cork's cocaine intoxication should have been presented to the jury, but it never made an offer of proof in the circuit court. Defendant contends in its reply brief that it was precluded from asking plaintiff whether she was aware that the toxicology results established the presence of cocaine in her daughter's system. Although defendant points to deposition testimony provided by plaintiff stating that she was aware of these circumstances, defendant does not show that this evidence was presented to the court as an offer of proof. Accordingly, defendant's argument as to the preclusion of evidence regarding Cork's cocaine intoxication is waived.

On remand, however, the circuit court must consider section 115—5.1 of the Code of Criminal Procedure of 1963 (725 ILCS 5/115—5.1 (West 2002)) (section 115—5.1), which allows a postmortem examina-

tion report to be admitted into evidence as *prima facie* proof of the cause of death.[2]

## IV

Defendant, citing *Northern Trust Co. v. Upjohn Co.*, 213 Ill. App. 3d 390, 572 N.E.2d 1030 (1991) (*Northern Trust*), asserts that the circuit court abused its discretion by denying its motion *in limine* to preclude Dr. Kirschner from offering opinions not supported by his pathology findings and outside his area of medical expertise. Defendant argues that Dr. Kirschner should not have been allowed to testify that there was a functional stenosis present in this case and that the defendant doctors had difficulties intubating Cork because of a stenosis they failed to diagnose. According to defendant, Dr. Kirschner did not have the requisite background to offer such opinions and found no pathology evidence of a stenosis during his postmortem medical examination. Defendant maintains that Dr. Kirschner's opinion regarding what doctors at Cook County would have seen had they performed a bronchoscopy was based upon pure speculation and was outside his area of medical expertise. Defendant avers that Dr. Kirschner's speculative opinions were prejudicial because the defense relied on the findings he actually reported in his postmortem examination and death certificate.

Plaintiff responds that the circuit court properly found Dr. Kirschner was qualified to recite his autopsy findings and to testify about his medical conclusions based upon those findings and his knowledge of Cork's condition. Plaintiff points out that Dr. Kirschner had testified hundreds of times for the Cook County State's Attorney's office and was called as a witness by defendant in the first trial of this case, but defendant now contests his qualifications to serve as an expert. Plaintiff maintains that Dr. Kirschner did not address whether defendant deviated from the standard of care; rather, he testified as to what he found and Cork's condition prior to her death.

A circuit court's decision to grant or deny a motion *in limine* will not be disturbed absent an abuse of discretion. *Lewis v. Haavig*, 337 Ill. App. 3d 1081, 1087, 788 N.E.2d 758 (2003).

■ In the present case, Dr. Kirschner did not testify as to whether

[2]Section 115—5.1 states that "[a] duly certified coroner's protocol or autopsy report, or both, complying with the requirements of this Section may be duly admitted into evidence as an exception to the hearsay rule as prima facie proof of the cause of death of the person to whom it relates." 725 ILCS 5/115—5.1 (West 2002). Records of the coroner's medical exam may be admitted as competent evidence in either civil or criminal actions. 725 ILCS 5/115—5.1 (West 2002).

defendant deviated from the standard of care, which is a *prima facie* element that must be proven to establish negligence in a medical malpractice action. *Northern Trust*, 213 Ill. App. 3d at 406. Instead, Dr. Kirschner testified as to his findings concerning Cork's cause of death based upon his pathology examination and autopsy, which are areas of medicine within his own knowledge and observation. See *Jones v. O'Young*, 154 Ill. 2d 39, 43, 607 N.E.2d 224 (1992). Further, defense counsel cross-examined Dr. Kirschner with respect to his lack of experience in performing bronchoscopies and diagnosing tracheal stenoses. It was for the jury to assess the credibility of Dr. Kirschner's testimony, weigh the evidence and resolve any conflicts. *Smith*, 339 Ill. App. 3d at 75.

In addition, Dr. Kirschner testified before the jury that his opinions remained the same as when he testified in the first trial on behalf of defendant. Therefore, defendant has no basis to contest Dr. Kirschner's qualifications as plaintiff's medical expert on retrial. The circuit court did not abuse its discretion by denying defendant's motion *in limine* to preclude Dr. Kirschner's testimony.

## V

Defendant argues that the circuit court abused its discretion by refusing to allow a jury instruction on sole proximate cause and by allowing the jury to award damages based on Cork's habits of industry. Defendant notes its theory at trial was that Cork's injury was caused solely as a result of the hanging and complications that resulted from the hanging, namely, pneumonia, empyema, ARDS and bronchospasm. Defendant contends it supported its sole proximate cause theory with testimony from Drs. Kahana, Goldman, Rodriguez and Bridges, each of whom testified as to other possible causes contributing to Cork's death. According to defendant, by refusing this instruction, the court, in effect, decided for the jury that Cork did not die from a lower airway problem such as pneumonia, ARDS or empyema. Defendant further avers that the court's exclusion of evidence of Cork's cocaine intoxication and suicide attempt was exacerbated when it allowed plaintiff a jury instruction that included an award to plaintiff based on Cork's habits of industry.

Plaintiff responds that the circuit court did not abuse its discretion by giving the jury the short form of Illinois Pattern Jury Instructions, Civil, No. 12.05 (1995) (hereinafter IPI Civil (1995) No. 12.05) or by including habits of industry as a factor to be weighed when determining damages.

The determination of whether to give a specific jury instruction is within the circuit court's discretion and that decision will not

be disturbed absent an abuse of discretion. *Trimble v. Olympic Tavern, Inc.*, 239 Ill. App. 3d 393, 401, 606 N.E.2d 1276 (1993). The standard for determining whether such abuse occurred is whether the instructions given fairly stated the law without having prejudiced a party and depriving him of a fair trial. *Dillon v. Evanston Hospital*, 199 Ill. 2d 483, 505, 771 N.E.2d 357 (2002). To justify an instruction, some evidence in the record must support the theory. Use of the long form of IPI Civil (1995) No. 12.05 is only appropriate "where there is evidence tending to show that the sole proximate cause of the occurrence was something other than the conduct of the defendant." See IPI Civil (1995) No. 12.05, Notes On Use, at 62.

 Here, defendant presented evidence of multifactorial causes of death, including pneumonia, ARDS, empyema and bronchospasm, rather than a sole proximate cause. This is distinguishable from *Ellig v. Delnor Community Hospital*, 237 Ill. App. 3d 396, 407-08, 603 N.E.2d 1203 (1992), a case relied upon by defendant. Defendant claims in its reply brief that the circuit court's basis for denying the long form instruction, the presence of multiple causes, has no support in the case law, yet defendant provides no authority that supports its position. All the cases upon which the instant defendant relies involved defendants who tendered jury instructions based on a *sole* proximate cause, not multiple factors. In addition, witnesses did not address how the various preexisting conditions suffered by Cork would constitute a sole proximate cause if the verdict were based on a failed intubation. Based on the foregoing, the circuit court did not abuse its discretion by giving the jury the short form of IPI Civil (1995) No. 12.05.

 With respect to jury instructions on Cork's habits of industry, defendant has waived this argument because it is unsupported by argument or pertinent legal authority in violation of Supreme Court Rule 341(e)(6) (188 Ill. 2d R. 341(e)(6)).

## VI

In light of our decision to reverse and remand this case for a new trial, we need not address defendant's final contention that the circuit court erred by denying its motion for a new trial based upon the conduct of plaintiff's counsel.

For the reasons stated above, the judgment of the circuit court of Cook County is reversed and the cause is remanded for a new trial consistent with this opinion.

Reversed and remanded.

HARTMAN and THEIS, JJ., concur.